# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| Michael Allen, Ricky Anderson, John Barnett, Daniel Bell, Don Biemer, Jason Billingsley, Andrew Brown, Jared Brown, Keith Burger, Jeff Burgess, Jeremy Clifford, Hank Crossman Jr., Adam Dallas, Mitchell Davidson, Steven Delles, Kirk Diehl, Nathan Dove, Bradley Downey, Faron Elliott, Julie Enlow, Jason Ewing, Justin Foringer, Susan Gales, Robert Garrett, Barry Gillum, Josh Hull, Mark Ingham, Richard Janosz, Jeremy D. Johnson, Jeremy M. Johnson, Justin King, Lewis Kirchner, Scott Lawton, Lester Lovelady, Dion McGee, Chris McShee, Robert Miller, Jason Monroe, Matthew Morgan, James Morton Jr., Toby Pack, Rennie Pankoski, Lamont Paulk, Denver Peterson, Michael Rafferty, Joseph Richardson, Mike Robbins, Moussa Sayed, Chris Scott, Corey Secrest, Joseph Shultz, Jason Siewert, Kenneth Stover, Brian Stutz, Nathan Taylor, Kevina Thomas, Kevin Van Wagenen, John Varecka, Derick Walker, William Wasdin III, Cleatis Webb, Jeffrey Whisner, and Kyle Wood, individually and on behalf of others similarly situated | Case No. MJG-18-744<br><br>**FIRST AMENDED COMPLAINT (JURY TRIAL DEMANDED)** |
| Plaintiffs, | |
| v. | |
| CSX Transportation, Inc., | |
| Defendant. | |

## INTRODUCTION

1.      Defendant CSX Transportation, Inc. ("CSX"), the third largest railroad in the United States, operates a 365-days-a-year business, meaning employees are needed for work on weekends and holidays. While CSX employees understand that working on weekends and holidays comes with the territory, they did not anticipate having to work through serious illnesses, miss their children's births, or choose between caring for their sick loved ones and losing their jobs.

2.      These activities, of course, make up the core substantive conduct protected by the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Yet CSX has engaged in a brazen pattern and practice of unlawfully discouraging FMLA leave and retaliating against workers who rely on the FMLA's protections.

3.      CSX has done so in three ways. *First*, CSX unlawfully inflates the amount of time employees are charged for FMLA leave. Department of Labor regulations require employers to "account for [FMLA] leave using an increment no greater than the shortest period of time that the employer uses to account for use of other forms of leave provided that it is not greater than one hour[.]" 29 C.F.R. § 825.205(a). CSX, however, accounts for FMLA leave by the day instead of by the hour. In other words, if an employee takes FMLA leave for four hours, from 10 p.m. to 2 a.m., CSX unlawfully calculates the leave as two days instead of four hours. CSX's policy has the purpose and effect of unlawfully minimizing the amount of FMLA leave taken by its employees.

4.      *Second*, in 2015, the company implemented an attendance policy that explicitly punishes employees for taking lawful FMLA leave. The policy assigns negative points for absences but allows employees to remove points through subsequent uninterrupted attendance over a specified period of time. Employees who take FMLA leave during the remediation period, however, are deemed ineligible to reduce their points. As a consequence, employees who have

taken FMLA leave are treated more unfavorably than those who did not. CSX's attendance policy effectively forces employees to choose between using their FMLA leave or returning to CSX's good graces-they cannot do both.

5.      *Third*, beginning in 2017 and continuing to the present, CSX has terminated or suspended over 100 employees on the allegation that these employees had fraudulently taken FMLA leave. CSX's large-scale purge of its workforce culminated immediately after the 2017 holiday season. One by one, employees learned that their holiday gift from CSX for the exercise of federally-protected FMLA rights was a suspension or pink slip. CSX's allegations of fraud were not only false but baseless. CSX punished these employees without any evidence of fraud. On the contrary, these workers *substantiated* their entitlement to FMLA leave. But CSX terminated or suspended them anyways.

6.      CSX's genuine motivations were crystal clear. Though its actions, CSX sought to chill the lawful use of FMLA leave and punish workers who took FMLA leave. Honoring the FMLA requires businesses to bear the costs of retaining a greater number of employees to cover all shifts. These costs can be especially acute for businesses like CSX who operate seven days a week, 365 days a year, including on weekends and holidays. By disregarding the FMLA's clear mandate, CSX saved significant sums of money by reducing its total workforce, limiting its employees' lawful use of FMLA leave, and sending a clear message to the remaining employees: take FMLA leave at you own peril.

7.      CSX, through its conduct, has violated the FMLA's anti-retaliation and anti-interference provisions.

8.      Plaintiffs bring this class action to restrain and enjoin CSX from engaging in a pattern and practice of punishing employees for taking FMLA leave and to recover damages caused by CSX's unlawful retaliatory conduct.

## PARTIES

9.      Plaintiff Michael Allen, who has worked for CSX for more than six years, resides in Greenville, New York.

10.      Plaintiff Ricky Anderson, who has worked for CSX for more than four years, resides in Ethridge, Tennessee.

11.      Plaintiff John Barnett, who had worked for CSX since 2011, resides in Keyser, West Virginia.

12.      Plaintiff Daniel Bell, who worked for CSX for over twelve years, resides m Bedford, Indiana.

13.      Plaintiff Don Biemer, who has worked for CSX since 1994, resides in Nottingham, Maryland.

14.      Jason Billingsley, who worked for CSX for more than a half decade, resides in Westville, Illinois.

15.      Plaintiff Andrew Brown, who worked for CSX for more than eleven years, resides in Auburndale, Florida.

16.      Plaintiff Jared Brown, who worked for CSX from 2001 to the incident at issue in this case, resides in Zionsville, Indiana.

17.      Plaintiff Keith Burger, who worked for CSX for nearly twelve years, resides in Fairview Park, Ohio.

18.    Plaintiff Jeff Burgess, who worked for CSX from May of 2007 to the incident at issue in this case, resides in Cumberland, Maryland.

19.    Plaintiff Jeremy Clifford, who worked for CSX for more than six years, resides in Morrow, Ohio.

20.    Plaintiff Hank Crossman Jr., who worked for CSX from 2011 to the incident at issue in this case, resides in Liverpool, New York.

21.    Plaintiff Adam Dallas, who has worked for CSX since 2011, resides in Crestline, Ohio.

22.    Plaintiff Mitchell Davidson, who has worked for CSX since 2000, resides in Blountville, Tennessee.

23.    Plaintiff Steven Delles, who has worked for CSX since 2011, resides in Cicero, New York.

24.    Plaintiff Kirk Diehl, who has worked for CSX, resides in Hyndman, Pennsylvania.

25.    Plaintiff Nathan Dove, who worked for CSX for more than eight years, resides in Trussville, Alabama.

26.    Plaintiff Bradley Downey, who worked for CSX for more than twenty-two years, resides in Fort Wayne, Indiana.

27.    Plaintiff Faron Elliott, who has worked for CSX for over fifteen years, resides in Manchester, Georgia.

28.    Plaintiff Julie Enlow has been substituted as a party in this case for Ken Enlow, who died while the lawsuit was stayed. Ken Enlow, who worked for CSX for more than fourteen years, resided in Avon, Indiana.

29.     Plaintiff Jason Ewing, who worked for CSX for nearly six years, resides m Cresaptown, Maryland.

30.     Plaintiff Justin Foringer, who worked for CSX for over thirteen years, resides in Cazenovia, New York.

31.     Plaintiff Susan Gales has been substituted as a party in this case for Scott Gales, who died while the lawsuit was stayed. Scott Gales, who worked for CSX for over thirteen years, resided in Hamburgh, Kentucky.

32.     Plaintiff Robert Garrett, who has worked for CSX since 2002, resides in Bedford, Indiana.

33.     Plaintiff Barry Gillum, who has worked for CSX for over seventeen years, resides in Cumberland, Maryland.

34.     Plaintiff Josh Hull, who worked for CSX, resides Murfreesboro, Tennessee.

35.     Plaintiff Mark Ingham, who worked for CSX for over nineteen years, resides in Niverville, New York.

36.     Plaintiff Richard Janosz, who has worked for CSX since 1994, resides in Depew, New York.

37.     Plaintiff Jeremy D. Johnson, who worked for CSX for nearly thirteen years, resides in Vinemont, Alabama.

38.     Plaintiff Jeremy M. Johnson, who worked in the railroad industry for over fourteen years, resides in Ridgeley, West Virginia.

39.     Plaintiff Justin King, who was hired by CSX in June of 2013, resides in Fitzgerald, Georgia.

40.    Plaintiff Lewis Kirchner, who was hired by CSX on October 31, 2014, resides in Moore, South Carolina.

41.    Plaintiff Scott Lawton, who has worked for CSX since 2004, resides in Amherst, New York.

42.    Plaintiff Lester Lovelady, who was hired by CSX on February 28, 2011, resides in Calera, Alabama.

43.    Plaintiff Dion McGee, who has worked for CSX for over seven years, resides in Fort Wayne, Indiana.

44.    Plaintiff Chris McShee, who has worked for CSX for over thirteen years, resides in Glen St Mary, Florida.

45.    Plaintiff Robert Miller, who was hired by CSX in 2005, resides in Connellsville, Pennsylvania.

46.    Plaintiff Jason Monroe, who worked for CSX for over seventeen years, resides in Blue Ridge, Georgia.

47.    Plaintiff Matthew Morgan, who has worked for CSX since 2004, resides in Ridgeley, West Virginia.

48.    Plaintiff James Morton Jr., who worked for CSX for over seventeen years, resides in Evans, Georgia.

49.    Plaintiff Toby Pack, who worked for CSX for nearly thirteen years, resides in Huntington, West Virginia.

50.    Plaintiff Rennie Pankoski, who has worked for CSX for over seven years, resides in Baltimore, Maryland.

51.    Plaintiff Lamont Paulk, who has worked for CSX for over eleven years, resides in Fort Wayne, Indiana.

52.    Plaintiff Denver Peterson, who has worked for CSX since 2000, resides in Etowah, Tennessee.

53.    Plaintiff Matthew Rafferty, who has worked for CSX since 2003, resides in Powell, Ohio.

54.    Plaintiff Joseph Richardson, who has worked for CSX from November of 2000 to the incident at issue in this case, resides in Springville, Alabama.

55.    Plaintiff Mike Robbins, who works for CSX, resides in Greenville, New York.

56.    Plaintiff Moussa Sayed, who has worked for CSX for nearly five years, resides in Oregon, Ohio.

57.    Plaintiff Chris Scott, who has worked for CSX for nearly sixteen years, resides in Lumberton, North Carolina.

58.    Plaintiff Corey Secrest, who has worked for CSX since 2000, resides in Murfreesboro, Tennessee.

59.    Plaintiff Joseph Shultz, who had worked for CSX since 2006, resides in Jacksonville, Florida. Plaintiff Jason Siewert, who has worked for CSX for over four years, resides in Henderson, Kentucky.

60.    Plaintiff Kenneth Stover, who has worked for CSX for over nineteen years, resides in Maryville, Tennessee.

61.    Plaintiff Bryan Stutz, who worked for CSX for nearly twenty years, resides in Pembroke, Massachusetts.

62.    Plaintiff Nathan Taylor, who has worked for CSX, resides Evansville, Indiana.

63.     Plaintiff Kevina Thomas, who worked for CSX from July of 2013 to the at-issue incident, resides in Toledo, Ohio.

64.     Plaintiff Kevin Van Wagenen, who worked for CSX for over five years, resides in Kingston, New York.

65.     Plaintiff John Varecka, who worked for CSX for over thirteen years, resides in Orchard Park, New York.

66.     Plaintiff Derick Walker, who had worked for CSX since 2005, resides in Greenwood, South Carolina.

67.     Plaintiff William Wasdin III, who worked for CSX for nearly thirteen years, resides in Waycross, Georgia.

68.     Plaintiff Cleatis Webb, who has worked for CSX for over fourteen years, resides in Amelia, Ohio.

69.     Plaintiff Jeffrey Whisner, who worked for CSX for over seven years, resides in Rawlings, Maryland.

70.     Plaintiff Kyle Wood, who has worked for CSX since 2007, resides in Syracuse, New York.

71.     CSX is headquartered in Jacksonville, Florida and provides freight rail transportation services in several states, including Maryland.

**JURISDICTION AND VENUE**

72.     This Court has original jurisdiction over Plaintiffs' FMLA claims under 28 U.S.C. § 1331.

73.     Venue is proper under 28 U.S.C. § 1391 because Plaintiffs Don Biemer, Jeff Burgess, Jason Ewing, Barry Gillum, Rennie Pankoski, and Jeffrey Whisner reside in Maryland;

CSX operates in Maryland; and some of the illegal conduct occurred in Maryland.

## FACTUAL ALLEGATIONS

### CSX'S COMPANYWIDE PRACTICES

74.     CSX operates a 365-day-a-year business, meaning employees are needed on weekends and holidays.

75.     While employees know that employment with CSX means having to work on weekends and holidays, they did not anticipate having to work through illnesses, miss their children's births, or being forced to choose between working and caring for their sick loved ones.

76.     Many employees have relied on FMLA leave.

77.     Employees' lawful use of FMLA has prevented CSX from reducing its workforce in the way it would like.

78.     CSX has therefore sought to curb its employees lawful us of FMLA in three ways.

79.     First, CSX has sought to limit the amount of FMLA its employees may take by miscounting the amount of leave they take.

80.     The FMLA entitles employees to take up to twelve weeks of leave a year.

81.     When employees apply for FMLA leave, their doctors approve them for a certain amount of time over a given period.

82.     The FMLA requires employers to allow employees to use FMLA leave in the smallest increment of time the employer allows for other forms of leave, as long as that increment is no more than one hour.

83.     CSX counts FMLA usage by the day, *e.g.*, if an employee uses FMLA leave for one standard overnight shift, CSX counts it as the employee taking two days instead of eight hours of FMLA leave.

84.     CSX's counting method illegally reduces the amount of FMLA leave its employees may take.

85.     Second, CSX has sought to deter its employees from using FMLA by, in 2015, implementing an attendance policy, called the "Crew Attendance Point System," or "CAPS," that penalizes employees for taking FMLA leave.

86.     Under the CAPS policy, CSX assigns points to employees who miss work. When employees accrue a certain number of points, they are terminated. CSX erases points from the employees' records when the employees go a certain period of time without missing a day of work.

87.     However, under the terms of the policy, employees who take FMLA leave during that same remediation time period are not eligible to have points erased from their record. Under CSX's attendance policy, in other words, an employee who does not miss work for the period specified in the CAPS policy will have points removed from his record. A second employee, who takes a single day off work to attend the birth of his child but is otherwise identically situated to the first employee, retains his points and remains on probation-and at a heightened risk of termination.

88.     CSX's purpose in enacting the CAPS policy was to discourage the lawful use of FMLA leave and punish employees who took FMLA leave.

89.     Third, beginning in 2017, CSX has engaged in a concerted campaign to purge itself of a significant portion of its employees who rely on FMLA leave and scare the remainder of its workforce from taking such leave by disciplining and terminating employees who use FMLA leave on weekends and holidays.

90.     CSX's campaign culminated in January of 2018, when CSX charged over 140 of the over 800 employees who took FMLA leave on Christmas Eve, Christmas Day, New Year's

Eve, or New Year's Day with a workplace rule violation-dishonesty-and removed them from service without pay for supposedly using their FMLA leave solely to avoid working on a holiday.

91.    CSX charged these employees with a workplace rule violation without having any reason to believe any of them had abused their FMLA leave.

92.    Under CSX's collective bargaining agreements with its employees' unions, the charged employees had a right to an internal hearing before they could be disciplined. The hearings, however, are not a neutral forum where an employee's responsibility for a supposed rule violation is fairly and independently determined. Instead, such hearings operate as a perfunctory means to assign blame to employees regardless of their actual responsibility for workplace rule violations. Hearing officers, who act as both prosecutor and judge, are members of management who are appointed by the company. Hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply; and employees are frequently found responsible based entirely on hearsay. The company can compel witnesses to appear but employees cannot. The company may conduct an investigation prior to the hearing but does not provide any discovery-not to mention exculpatory evidence-to the charged employee. And the hearings typically take less than one day. It is well known that these hearings almost always are decided in favor of the railroad.

93.    For many of the charged employees, CSX leveraged the kangaroo-court nature of its discipline process by telling the employees that it would terminate them if they insisted on their right to a hearing. CSX then offered the employees a waiver, pursuant to which they could admit guilt, forgo the hearing, and receive a suspension without pay in lieu of termination.

94.    For the employees who refused to admit to something they had not done and the employees to whom it did not offer a waiver, CSX held proforma hearings on the spurious charges.

95.     At the hearings, CSX unlawfully placed the burden on the employees to reveal more information about their and their loved ones' medical conditions than the FMLA requires.

96.     The hearings nevertheless completely refuted CSX's allegation of widespread FMLA fraud. On the contrary, employees pleaded with CSX to consider evidence that they properly exercised their right to FMLA leave on account of their pre-existing-and well known-serious health conditions (or those of their family members). CSX did not listen.

97.     After the hearings, CSX either suspended or terminated the overwhelming majority of the charged employees.

98.     CSX's remaining employees who need FMLA leave are now terrified to exercise their rights under the FMLA. Having received CSX's message loud and clear, CSX's employees now go to all possible lengths to avoid taking FMLA leave.

## PLAINTIFF MICHAEL ALLEN

99.     Plaintiff Michael Allen suffers from a serious health condition within the FMLA's meaning.

100.    Plaintiff Michael Allen's serious health condition is also a disability within the ADA's meaning.

101.    Plaintiff Michael Allen had requested intermittent FMLA leave for his serious health condition.

102.    CSX approved Plaintiff Michael Allen's request for intermittent FMLA leave.

103.    Since then, Plaintiff Michael Allen has submitted the paperwork necessary to maintain his intermittent FMLA leave.

104.    Plaintiff Michael Allen's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

105.    From December 23, 2017 at 9:18 p.m. to December 26, 2017 at 6:28 a.m., Plaintiff Michael Allen's serious health condition caused him to be unable to safely perform his job.

106.    Plaintiff Michael Allen therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

107.    Thereafter, CSX accused Plaintiff Michael Allen of abusing his intermittent FMLA leave and suspended him for thirty days without pay.

108.    CSX had no reason to believe Plaintiff Michael Allen was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF RICKY ANDERSON

109.    Plaintiff Ricky Anderson suffers from a serious health condition within the FMLA's meaning.

110.    Plaintiff Ricky Anderson's serious health condition is also a disability within the ADA's meaning.

111.    Plaintiff Ricky Anderson had requested intermittent FMLA leave for his serious health condition.

112.    CSX approved Plaintiff Ricky Anderson's request for intermittent FMLA leave.

113.    Since then, Plaintiff Ricky Anderson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

114.    Plaintiff Ricky Anderson's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

115.    From December 30, 2017 at 1:25 p.m. to January 1, 2018 at 8:34 a.m., Plaintiff Ricky Anderson's serious health condition caused him to be unable to safely perform his job.

116.    Plaintiff Ricky Anderson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

117.    Thereafter, CSX accused Plaintiff Ricky Anderson of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was thirty-nine days.

118.    CSX had no reason to believe Plaintiff Ricky Anderson was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JOHN BARNETT**

119.    Plaintiff John Barnett suffers from a serious health condition within the FMLA's meaning.

120.    Plaintiff John Barnett's serious health condition is also a disability within the ADA's meaning.

121.    Plaintiff John Barnett had requested intermittent FMLA leave for his serious health condition.

122.    CSX approved Plaintiff John Barnett's request for intermittent FMLA leave.

123.    Since then, Plaintiff John Barnett has submitted the paperwork necessary to maintain his intermittent FMLA leave.

124.    Plaintiff John Barnett's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

125.    During the 2017 Christmas and New Year's Eve holidays, Plaintiff John Barnett's serious health condition caused him to be unable to safely perform his job.

126.    Plaintiff John Barnett therefore notified CSX via one of the means specified in its

policies that he needed to use the intermittent FMLA leave for which he had already been approved.

127.    Thereafter, CSX accused Plaintiff John Barnett of abusing his intermittent FMLA leave and terminated him.

128.    CSX had no reason to believe Plaintiff John Barnett was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF DANIEL BELL**

129.    Plaintiff Daniel Bell suffers from a serious health condition within the FMLA's meaning.

130.    Plaintiff Daniel Bell's serious health condition is also a disability within the ADA's meaning.

131.    Plaintiff Daniel Bell had requested intermittent FMLA leave for his serious health condition.

132.    CSX approved Plaintiff Daniel Bell's request for intermittent FMLA leave.

133.    Since then, Plaintiff Daniel Bell has submitted the paperwork necessary to maintain his intermittent FMLA leave.

134.    Plaintiff Daniel Bell's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

135.    From December 24, 2017 at 12:43 a.m. to December 24, 2017 at 5:20 p.m., Plaintiff Daniel Bell's serious health condition caused him to be unable to safely perform his job.

136.    Plaintiff Daniel Bell therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

137.    Thereafter, CSX accused Plaintiff Daniel Bell of abusing his intermittent FMLA leave and terminated him.

138.    CSX had no reason to believe Plaintiff Daniel Bell was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF DON BIEMER

139.    Plaintiff Don Biemer suffers from a serious health condition within the FMLA's meaning.

140.    Plaintiff Don Biemer's serious health condition is also a disability within the ADA's meaning.

141.    Plaintiff Don Biemer had requested intermittent FMLA leave for his serious health condition.

142.    CSX approved Plaintiff Don Biemer's request for intermittent FMLA leave.

143.    Since then, Plaintiff Don Biemer has submitted the paperwork necessary to maintain his intermittent FMLA leave.

144.    Plaintiff Don Biemer's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

145.    From December 24, 2017 at 8:04 a.m. to December 25, 2017 at 10:40 p.m., Plaintiff Don Biemer's serious health condition caused him to be unable to safely perform his job.

146.    Plaintiff Don Biemer therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

147.    Thereafter, CSX accused Plaintiff Don Biemer of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was

January 5 to February 20, 2018.

148.    CSX had no reason to believe Plaintiff Don Biemer was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF JASON BILLINGSLEY

149.    Plaintiff Jason Billingsley suffers from a serious health condition within the FMLA's meaning.

150.    Plaintiff Jason Billingsley's serious health condition results from anatomical, physiological, and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

151.    Plaintiff Jason Billingsley's serious health condition substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

152.    Plaintiff Jason Billingsley requested intermittent FMLA leave for his serious health condition.

153.    CSX approved Plaintiff Jason Billingsley's request for intermittent FMLA leave.

154.    Plaintiff Jason Billingsley submitted the paperwork necessary to maintain his intermittent FMLA leave.

155.    Plaintiff Jason Billingsley's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

156.    From December 23, 2017 at 3:00 a.m. to December 24, 2017 at 11:50 p.m., Plaintiff Jason Billingsley's serious health condition caused him to be unable to safely perform his job.

157.    Plaintiff Jason Billingsley therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

158.    Thereafter, CSX accused Plaintiff Jason Billingsley of abusing his intermittent FMLA leave and terminated him.

159.    CSX had no reason to believe Plaintiff Jason Billingsley was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF ANDREW BROWN

160.    Plaintiff Andrew Brown suffers from a serious health condition within the FMLA's meaning.

161.    Plaintiff Andrew Brown's serious health condition is also a disability within the ADA's meaning.

162.    Plaintiff Andrew Brown had requested intermittent FMLA leave for his serious health condition.

163.    CSX approved Plaintiff Andrew Brown's request for intermittent FMLA leave.

164.    Since then, Plaintiff Andrew Brown has submitted the paperwork necessary to maintain his intermittent FMLA leave.

165.    Plaintiff Andrew Brown's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

166.    From December 24, 2017 at 3:00 p.m. to December 26, 2017 at 12:03 a.m. and December 31, 2017 at 8:08 a.m. to January 1, 2018 at 12:01 a.m., Plaintiff Andrew Brown's serious health condition caused him to be unable to safely perform his job.

167.    Plaintiff Andrew Brown therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

168.    Thereafter, CSX accused Plaintiff Andrew Brown of abusing his intermittent

FMLA leave and terminated him.

169.    CSX had no reason to believe Plaintiff Andrew Brown was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JARED BROWN

170.    Plaintiff Jared Brown suffers from a serious health condition within the FMLA's meaning.

171.    Plaintiff Jared Brown's serious health condition is also a disability within the ADA's meaning.

172.    Plaintiff Jared Brown had requested intermittent FMLA leave for his serious health condition.

173.    CSX approved Plaintiff Jared Brown's request for intermittent FMLA leave.

174.    Since then, Plaintiff Jared Brown has submitted the paperwork necessary to maintain his intermittent FMLA leave.

175.    Plaintiff Jared Brown's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

176.    From December 23, 2017 at 11:38 p.m. to December 26, 2017 at 7:58 a.m., Plaintiff Jared Brown's serious health condition caused him to be unable to safely perform his job.

177.    Plaintiff Jared Brown therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

178.    Thereafter, CSX accused Plaintiff Jared Brown of abusing his intermittent FMLA leave and terminated him.

179.    CSX had no reason to believe Plaintiff Jared Brown was abusing his intermittent

FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF KEITH BURGER

180.    Plaintiff Keith Burger suffers from a serious health condition within the FMLA's meaning.

181.    Plaintiff Keith Burger's serious health condition is also a disability within the ADA's meaning.

182.    Plaintiff Keith Burger had requested intermittent FMLA leave for his serious health condition.

183.    CSX approved Plaintiff Keith Burger's request for intermittent FMLA leave.

184.    Since then, Plaintiff Keith Burger has submitted the paperwork necessary to maintain his intermittent FMLA leave.

185.    Plaintiff Keith Burger's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

186.    From January 1, 2018 at 3:29 a.m. to January 2, 2018 at 2:52 a.m., Plaintiff Keith Burger's serious health condition caused him to be unable to safely perform his job.

187.     Plaintiff Keith Burger therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

188.    Thereafter, CSX accused Plaintiff Keith Burger of abusing his intermittent FMLA leave and terminated him.

189.    CSX had no reason to believe Plaintiff Keith Burger was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JEFF BURGESS**

190.    Plaintiff Jeff Burgess suffers from a serious health condition within the FMLA's meaning.

191.    Plaintiff Jeff Burgess's serious health condition is also a disability within the ADA's meaning.

192.    Plaintiff Jeff Burgess had requested intermittent FMLA leave for his serious health condition.

193.    CSX approved Plaintiff Jeff Burgess's request for intermittent FMLA leave.

194.    Since then, Plaintiff Jeff Burgess has submitted the paperwork necessary to maintain his intermittent FMLA leave.

195.    Plaintiff Jeff Burgess's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

196.    From December 23, 2017 at 6:16 a.m. to December 25, 2017 at 11:11 p.m., Plaintiff Jeff Burgess's serious health condition caused him to be unable to safely perform his job.

197.    Plaintiff Jeff Burgess therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

198.    Thereafter, CSX accused Plaintiff Jeff Burgess of abusing his intermittent FMLA leave and terminated him.

199.    CSX had no reason to believe Plaintiff Jeff Burgess was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JEREMY CLIFFORD**

200.    Plaintiff Jeremy Clifford's spouse suffers from a serious health condition within the

FMLA's meaning.

201.    Plaintiff Jeremy Clifford's spouse's serious health condition results from anatomical, physiological, and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

202.    Plaintiff Jeremy Clifford's spouse's serious health condition substantially limits her ability to care for herself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

203.    Plaintiff Jeremy Clifford requested intermittent FMLA leave for his spouse's serious health condition.

204.    CSX approved Plaintiff Jeremy Clifford's request for intermittent FMLA leave.

205.    Plaintiff Jeremy Clifford submitted the paperwork necessary to maintain his intermittent FMLA leave.

206.    Plaintiff Jeremy Clifford's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

207.    On March 28, 2018, Plaintiff Jeremy Clifford's spouse's serious health condition necessitated him missing work.

208.    Plaintiff Jeremy Clifford therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

209.    CSX nevertheless assigned points to Plaintiff Jeremy Clifford for his absence.

210.    CSX then terminated Plaintiff Jeremy Clifford because of those points and the points that remained on his record because of his prior FMLA use.

**PLAINTIFF HANK CROSSMAN JR.**

211.    Plaintiff Hank Crossman Jr. suffers from a serious health condition within the

FMLA's meaning.

212.    Plaintiff Hank Crossman Jr.'s serious health condition is also a disability within the ADA's meaning.

213.    Plaintiff Hank Crossman Jr. had requested intermittent FMLA leave for his serious health condition.

214.    CSX approved Plaintiff Hank Crossman Jr.'s request for intermittent FMLA leave.

215.    Since then, Plaintiff Hank Crossman Jr. has submitted the paperwork necessary to maintain his intermittent FMLA leave.

216.    Plaintiff Hank Crossman Jr.'s use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

217.    From December 24, 2017 at 3:00 p.m. to December 26, 2017 at 8:06 a.m., Plaintiff Hank Crossman Jr.'s serious health condition caused him to be unable to safely perform his job.

218.     Plaintiff Hank Crossman Jr. therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

219.    Thereafter, CSX accused Plaintiff Hank Crossman Jr. of abusing his intermittent FMLA leave and terminated him.

220.    CSX had no reason to believe Plaintiff Hank Crossman Jr. was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF ADAM DALLAS**

221.    Plaintiff Adam Dallas suffers from a serious health condition within the FMLA's meaning.

222.    Plaintiff Adam Dallas's serious health condition is also a disability within the

ADA's meaning.

223.    Plaintiff Adam Dallas had requested intermittent FMLA leave for his serious health condition.

224.    CSX approved Plaintiff Adam Dallas's request for intermittent FMLA leave.

225.    Since then, Plaintiff Adam Dallas has submitted the paperwork necessary to maintain his intermittent FMLA leave.

226.    Plaintiff Adam Dallas's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

227.    From December 24, 2017 at 3:00 p.m. to December 26, 2017 at 8:06 a.m., Plaintiff Adam Dallas's serious health condition caused him to be unable to safely perform his job.

228.    Plaintiff Adam Dallas therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

229.    Thereafter, CSX accused Plaintiff Adam Dallas of abusing his intermittent FMLA leave and suspended him without pay.

230.    CSX had no reason to believe Plaintiff Adam Dallas was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF MITCHELL DAVIDSON**

231.    Plaintiff Mitchell Davidson suffers from a serious health condition within the FMLA's meaning.

232.    Plaintiff Mitchell Davidson's serious health condition is also a disability within the ADA's meaning.

233.    Plaintiff Mitchell Davidson had requested intermittent FMLA leave for his serious

health condition.

234.    CSX approved Plaintiff Mitchell Davidson's request for intermittent FMLA leave.

235.    Since then, Plaintiff Mitchell Davidson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

236.    Plaintiff Mitchell Davidson's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

237.    From December 23, 2017 at 6:45 a.m. to December 26, 2017 at 12:07 a.m., Plaintiff Mitchell Davidson's serious health condition caused him to be unable to safely perform his job.

238.    Plaintiff Mitchell Davidson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

239.    Thereafter, CSX accused Plaintiff Mitchell Davidson of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was fifty-nine days.

240.    CSX had no reason to believe Plaintiff Mitchell Davidson was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF STEVEN DELLES**

241.    Plaintiff Steven Delles suffers from a serious health condition within the FMLA's meaning.

242.    Plaintiff Steven Delles's serious health condition is also a disability within the ADA's meaning.

243.    Plaintiff Steven Delles had requested intermittent FMLA leave for his serious health condition.

244.    CSX approved Plaintiff Steven Delles's request for intermittent FMLA leave.

245.    Since then, Plaintiff Steven Delles has submitted the paperwork necessary to maintain his intermittent FMLA leave.

246.    Plaintiff Steven Delles's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

247.    From December 30, 2017 at 10:17 p.m. to January 1, 2018 at 3:09 p.m., Plaintiff Steven Delles's serious health condition caused him to be unable to safely perform his job.

248.    Plaintiff Steven Delles therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

249.    Thereafter, CSX accused Plaintiff Steven Delles of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 22 to February 26, 2018.

250.    CSX had no reason to believe Plaintiff Steven Delles was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF KIRK DIEHL**

251.    Plaintiff Kirk Diehl suffers from a serious health condition within the FMLA's meaning.

252.    Plaintiff Kirk Diehl's serious health condition is also a disability within the ADA's meaning.

253.    Plaintiff Kirk Diehl had requested intermittent FMLA leave for his serious health condition.

254.    CSX approved Plaintiff Kirk Diehl's request for intermittent FMLA leave.

255.    Since then, Plaintiff Kirk Diehl has submitted the paperwork necessary to maintain his intermittent FMLA leave.

256.    Plaintiff Kirk Diehl's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

257.    From December 23, 2017 at 6:22 a.m. to December 25, 2017 at 10:16 p.m., Plaintiff Kirk Diehl's serious health condition caused him to be unable to safely perform his job.

258.    Plaintiff Kirk Diehl therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

259.    Thereafter, CSX accused Plaintiff Kirk Diehl of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 2 to February 22, 2018.

260.    CSX had no reason to believe Plaintiff Kirk Diehl was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF NATHAN DOVE**

261.    Plaintiff Nathan Dove's father suffers from a serious health condition within the FMLA's meaning.

262.    Plaintiff Nathan Dove's father's serious health condition is also a disability within the ADA's meaning.

263.    Plaintiff Nathan Dove had requested intermittent FMLA leave so that he could care for his father when his father's serious health condition so necessitated.

264.    CSX approved Plaintiff Nathan Dove's request for intermittent FMLA leave.

265.    Since then, Plaintiff Nathan Dove has submitted the paperwork necessary to

maintain his intermittent FMLA leave.

266.    Plaintiff Nathan Dove's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

267.    From December 24, 2017 at 1:37 p.m. to December 25, 2017 at 4:52 p.m., the serious health of Plaintiff Nathan Dove's father necessitated Plaintiff Nathan Dove taking time off work.

268.    Plaintiff Nathan Dove therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

269.    Thereafter, CSX accused Plaintiff Nathan Dove of abusing his intermittent FMLA leave and terminated him.[1]

270.    CSX had no reason to believe Plaintiff Nathan Dove was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF BRADLEY DOWNEY**

271.    Plaintiff Bradley Downey suffers from a serious health condition within the FMLA's meaning.

272.    Plaintiff Bradley Downey's serious health condition is also a disability within the ADA's meaning.

273.    Plaintiff Bradley Downey had requested intermittent FMLA leave for his serious health condition.

274.    CSX approved Plaintiff Bradley Downey's request for intermittent FMLA leave.

275.    Since then, Plaintiff Bradley Downey has submitted the paperwork necessary to

---

[1] CSX subsequently reinstated Dove but without backpay.

maintain his intermittent FMLA leave.

276.    Plaintiff Bradley Downey's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

277.    From December 24, 2017 at 2:55 a.m. to December 25, 2017 at 9:23 a.m. and December 31, 2017 at 3:34 a.m. to December 31, 2017 at 11:59 p.m., Plaintiff Bradley Downey's serious health condition caused him to be unable to safely perform his job.

278.    Plaintiff Bradley Downey therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

279.    Thereafter, CSX accused Plaintiff Bradley Downey of abusing his intermittent FMLA leave and terminated him.

280.    CSX had no reason to believe Plaintiff Bradley Downey was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF FARON ELLIOTT**

281.    Plaintiff Faron Elliott suffers from a serious health condition within the FMLA's meaning.

282.    Plaintiff Faron Elliott's serious health condition is also a disability within the ADA's meaning.

283.    Plaintiff Faron Elliott had requested intermittent FMLA leave for his serious health condition.

284.    CSX approved Plaintiff Faron Elliott's request for intermittent FMLA leave.

285.    Since then, Plaintiff Faron Elliott has submitted the paperwork necessary to maintain his intermittent FMLA leave.

286.    Plaintiff Faron Elliott's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

287.    From December 30, 2017 at 5:39 a.m. to January 1, 2018 at 7:51 p.m., Plaintiff Faron Elliott's serious health condition caused him to be unable to safely perform his job.

288.     Plaintiff Faron Elliott therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

289.    Thereafter, CSX accused Plaintiff Faron Elliott of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was from January 22 to March 8, 2018.

290.    CSX had no reason to believe Plaintiff Faron Elliott was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF JULIE ENLOW

291.    Plaintiff Julie Enlow is the representative of deceased Plaintiff Ken Enlow, who died while this lawsuit was stayed. Julie Enlow was married to Ken Enlow at the time he died.

292.    Ken Enlow suffered from a serious health condition within the FMLA's meaning.

293.    Ken Enlow's serious health condition was also a disability within the ADA's meaning.

294.    Ken Enlow had requested intermittent FMLA leave for his serious health condition.

295.    CSX approved Ken Enlow's request for intermittent FMLA leave.

296.    Thereafter, Ken Enlow submitted the paperwork necessary to maintain his intermittent FMLA leave.

297.    Ken Enlow's use of FMLA leave caused negative points under CSX's CAPS

system to remain on his record.

298.    From December 24, 2017 at 11:00 a.m. to December 26, 2017 at 9:14 a.m., Ken Enlow's serious health condition caused him to be unable to safely perform his job.

299.    Ken Enlow therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

300.    Thereafter, CSX accused Ken Enlow of abusing his intermittent FMLA leave and suspended him for thirty days without pay.

301.    CSX had no reason to believe Ken Enlow was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JASON EWING**

302.    Plaintiff Jason Ewing suffers from a serious health condition within the FMLA's meaning.

303.    Plaintiff Jason Ewing's serious health condition is also a disability within the ADA's meaning.

304.    Plaintiff Jason Ewing had requested intermittent FMLA leave for his serious health condition.

305.    CSX approved Plaintiff Jason Ewing's request for intermittent FMLA leave.

306.    Since then, Plaintiff Jason Ewing has submitted the paperwork necessary to maintain his intermittent FMLA leave.

307.    Plaintiff Jason Ewing's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

308.    From December 24, 2017 at 10:01 a.m. to December 25, 2017 at 11:28 a.m., Plaintiff Jason Ewing's serious health condition caused him to be unable to safely perform his job.

309.    Plaintiff Jason Ewing therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

310.    Thereafter, CSX accused Plaintiff Jason Ewing of abusing his intermittent FMLA leave and terminated him.

311.    CSX had no reason to believe Plaintiff Jason Ewing was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JUSTIN FORINGER**

312.    Plaintiff Justin Foringer suffers from a serious health condition within the FMLA's meaning.

313.    Plaintiff Justin Foringer's serious health condition is also a disability within the ADA's meaning.

314.    Plaintiff Justin Foringer had requested intermittent FMLA leave for his serious health condition.

315.    CSX approved Plaintiff Justin Foringer's request for intermittent FMLA leave.

316.    Since then, Plaintiff Justin Foringer has submitted the paperwork necessary to maintain his intermittent FMLA leave.

317.    Plaintiff Justin Foringer's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

318.    From December 24, 2017 at 4:02 a.m. to December 26, 2017 at 10:13 a.m., Plaintiff Justin Foringer's serious health condition caused him to be unable to safely perform his job.

319.    Plaintiff Justin Foringer therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been

approved.

320.    Thereafter, CSX accused Plaintiff Justin Foringer of abusing his intermittent FMLA leave and terminated him.

321.    CSX had no reason to believe Plaintiff Justin Foringer was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF SUSAN GALES

322.    Plaintiff Susan Gales is the representative of deceased Plaintiff Scott Gales, who died while this lawsuit was stayed. Susan Gales was married to Scott Gales at the time he died.

323.    Scott Gales suffered from a serious health condition within the FMLA's meaning.

324.    Scott Gales' serious health condition was also a disability within the ADA's meaning.

325.    Scott Gales had requested intermittent FMLA leave for his serious health condition.

326.    CSX approved Scott Gales' request for intermittent FMLA leave.

327.    Thereafter, Scott Gales submitted the paperwork necessary to maintain his intermittent FMLA leave.

328.    Scott Gales' use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

329.    From December 23, 2017 at 7:38 p.m. to December 25, 2017 at 1:50 a.m., Scott Gales' serious health condition caused him to be unable to safely perform his job.

330.    Scott Gales therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

331.    Thereafter, CSX accused Scott Gales of abusing his intermittent FMLA leave and terminated him.

332.    CSX had no reason to believe Scott Gales was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF ROBERT GARRETT

333.    Plaintiff Robert Garrett suffers from a serious health condition within the FMLA's meaning.

334.    Plaintiff Robert Garrett's serious health condition is also a disability within the ADA's meaning.

335.    Plaintiff Robert Garrett had requested intermittent FMLA leave for his serious health condition.

336.    CSX approved Plaintiff Robert Garrett's request for intermittent FMLA leave.

337.    Since then, Plaintiff Robert Garrett has submitted the paperwork necessary to maintain his intermittent FMLA leave.

338.    Plaintiff Robert Garrett's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

339.    From December 24, 2017 at 12:06 a.m. to December 26, 2017 at 8:20 a.m., Plaintiff Robert Garrett's serious health condition caused him to be unable to safely perform his job.

340.     Plaintiff Robert Garrett therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

341.    Thereafter, CSX accused Plaintiff Robert Garrett of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was more than fifty days.

342.    CSX had no reason to believe Plaintiff Robert Garrett was abusing his intermittent

FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF BARRY GILLUM

343.    Plaintiff Barry Gillum suffers from a serious health condition within the FMLA's meaning.

344.    Plaintiff Barry Gillum's serious health condition is also a disability within the ADA's meaning.

345.    Plaintiff Barry Gillum had requested intermittent FMLA leave for his serious health condition.

346.    CSX approved Plaintiff Barry Gillum's request for intermittent FMLA leave.

347.    Since then, Plaintiff Barry Gillum has submitted the paperwork necessary to maintain his intermittent FMLA leave.

348.    Plaintiff Barry Gillum's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

349.    On Christmas Eve and Christmas Day of 2017, Plaintiff Barry Gillum's serious health condition caused him to be unable to safely perform his job.

350.    Plaintiff Barry Gillum therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

351.    Thereafter, CSX accused Plaintiff Barry Gillum of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was forty-five days.

352.    CSX had no reason to believe Plaintiff Barry Gillum was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JOSH HULL**

353.    Plaintiff Josh Hull suffers from a serious health condition within the FMLA's meaning.

354.    Plaintiff Josh Hull's serious health condition is also a disability within the ADA's meaning.

355.    Plaintiff Josh Hull had requested intermittent FMLA leave for his serious health condition.

356.    CSX approved Plaintiff Josh Hull's request for intermittent FMLA leave.

357.    Since then, Plaintiff Josh Hull has submitted the paperwork necessary to maintain his intermittent FMLA leave.

358.    Plaintiff Josh Hull's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

359.    During the Christmas and New Year's Eve Holidays of 2017, Plaintiff Josh Hull's serious health condition caused him to be unable to safely perform his job.

360.    Plaintiff Josh Hull therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

361.    Thereafter, CSX accused Plaintiff Josh Hull of abusing his intermittent FMLA leave and terminated him.

362.    CSX had no reason to believe Plaintiff Josh Hull was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF MARK INGHAM**

363.    Plaintiff Mark Ingham suffers from a serious health condition within the FMLA's

meaning.

364.    Plaintiff Mark Ingham's serious health condition is also a disability within the ADA's meaning.

365.    Plaintiff Mark Ingham had requested intermittent FMLA leave for his serious health condition.

366.    CSX approved Plaintiff Mark Ingham's request for intermittent FMLA leave.

367.    Since then, Plaintiff Mark Ingham has submitted the paperwork necessary to maintain his intermittent FMLA leave.

368.    Plaintiff Mark Ingham's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

369.    From December 23, 2017 at 7:28 p.m. to December 25, 2017 at 5:25 p.m. and December 30, 2017 at 12:11 a.m. to 12/31/2017 at 11:51 p.m., Plaintiff Mark Ingham's serious health condition caused him to be unable to safely perform his job.

370.    Plaintiff Mark Ingham therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

371.    Thereafter, CSX accused Plaintiff Mark Ingham of abusing his intermittent FMLA leave and terminated him.

372.    CSX had no reason to believe Plaintiff Mark Ingham was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF RICHARD JANOSZ**

373.    Plaintiff Richard Janosz suffers from a serious health condition within the FMLA's meaning.

374.    Plaintiff Richard Janosz's serious health condition is also a disability within the ADA's meaning.

375.    Plaintiff Richard Janosz had requested intermittent FMLA leave for his serious health condition.

376.    CSX approved Plaintiff Richard Janosz's request for intermittent FMLA leave.

377.    Since then, Plaintiff Richard Janosz has submitted the paperwork necessary to maintain his intermittent FMLA leave.

378.    Plaintiff Richard Janosz's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

379.    On September 9, 2018, Plaintiff Richard Janosz's serious health condition caused him to be unable to safely perform his job.

380.    Plaintiff Richard Janosz therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

381.    Thereafter, CSX accused Plaintiff Richard Janosz of abusing his intermittent FMLA leave and suspended him.

382.    CSX had no reason to believe Plaintiff Richard Janosz was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF JEREMY D. JOHNSON

383.    Plaintiff Jeremy D. Johnson's wife suffers from a serious health condition within the FMLA's meaning.

384.    Plaintiff Jeremy D. Johnson's serious health condition is also a disability within the ADA's meaning.

385.    Plaintiff Jeremy D. Johnson had requested intermittent FMLA leave for his wife's serious health condition.

386.    CSX approved Plaintiff Jeremy D. Johnson's request for intermittent FMLA leave.

387.    Since then, Plaintiff Jeremy D. Johnson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

388.    Plaintiff Jeremy D. Johnson's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

389.    On December 30, 2017, the serious health condition of Plaintiff Jeremy D. Johnson's wife caused him to be unable to work.

390.    Plaintiff Jeremy D. Johnson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

391.    Thereafter, CSX accused Plaintiff Jeremy D. Johnson of abusing his intermittent FMLA leave and was terminated.

392.    CSX had no reason to believe Plaintiff Jeremy D. Johnson was abusing his intermittent FMLA leave.

**PLAINTIFF JEREMY M. JOHNSON**

393.    Plaintiff Jeremy M. Johnson suffers from a serious health condition within the FMLA's meaning.

394.    Plaintiff Jeremy M. Johnson's serious health condition is also a disability within the ADA's meaning.

395.    Plaintiff Jeremy M. Johnson had requested intermittent FMLA leave for his serious health condition.

396.    CSX approved Plaintiff Jeremy M. Johnson's request for intermittent FMLA leave.

397.    Since then, Plaintiff Jeremy M. Johnson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

398.    Plaintiff Jeremy M. Johnson's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

399.    From December 23, 2017 at 7:26 a.m. to December 26, 2017 at 8:25 a.m., Plaintiff Jeremy M. Johnson's serious health condition caused him to be unable to safely perform his job.

400.    Plaintiff Jeremy M. Johnson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

401.    Thereafter, CSX accused Plaintiff Jeremy M. Johnson of abusing his intermittent FMLA leave and terminated him.

402.    CSX had no reason to believe Plaintiff Jeremy M. Johnson was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JUSTIN KING**

403.    Plaintiff Justin King suffers from a serious health condition within the FMLA's meaning.

404.    Plaintiff Justin King's serious health condition is also a disability within the ADA's meaning.

405.    Plaintiff Justin King had requested intermittent FMLA leave for his serious health condition.

406.    CSX approved Plaintiff Justin King's request for intermittent FMLA leave.

407.    Since then, Plaintiff Justin King has submitted the paperwork necessary to maintain

his intermittent FMLA leave.

408.    Plaintiff Justin King's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

409.    From December 23, 2017 at 1:35 p.m. to December 25, 2017 at 1:35 p.m., Plaintiff Justin King's serious health condition caused him to be unable to safely perform his job.

410.    Plaintiff Justin King therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

411.    Thereafter, CSX accused Plaintiff Justin King of abusing his intermittent FMLA leave and terminated him.

412.    CSX had no reason to believe Plaintiff Justin King was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF LEWIS KIRCHNER

413.    Plaintiff Lewis Kirchner suffers from a serious health condition within the FMLA's meaning.

414.    Plaintiff Lewis Kirchner's serious health condition is also a disability within the ADA's meaning.

415.    Plaintiff Lewis Kirchner had requested intermittent FMLA leave for his serious health condition.

416.    CSX approved Plaintiff Lewis Kirchner's request for intermittent FMLA leave.

417.    Since then, Plaintiff Lewis Kirchner has submitted the paperwork necessary to maintain his intermittent FMLA leave.

418.    Plaintiff Lewis Kirchner's use of FMLA leave caused negative points under CSX's

CAPS system to remain on his record.

419.    From December 23, 2017 at 12:20 p.m. to December 25, 2017 at 12:26 p.m. and December 30, 2017 at 11:10 p.m. to January 1, 2018 at 8:34 p.m.  Plaintiff Lewis Kirchner's serious health condition caused him to be unable to safely perform his job.

420.    Plaintiff Lewis Kirchner therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

421.    Thereafter, CSX accused Plaintiff Lewis Kirchner of abusing his intermittent FMLA leave and terminated him.

422.    CSX had no reason to believe Plaintiff Lewis Kirchner was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF SCOTT LAWTON

423.    Plaintiff Scott Lawton suffers from a serious health condition within the FMLA's meaning.

424.    Plaintiff Scott Lawton's serious health condition is also a disability within the ADA's meaning.

425.    Plaintiff Scott Lawton had requested intermittent FMLA leave for his serious health condition.

426.    CSX approved Plaintiff Scott Lawton's request for intermittent FMLA leave.

427.    Since then, Plaintiff Scott Lawton has submitted the paperwork necessary to maintain his intermittent FMLA leave.

428.    CSX's policy of calculating FMLA leave by the day caused Plaintiff Scott Lawton to be charged with using more FMLA leave than he had, in fact, taken.

429.     Plaintiff Scott Lawton's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

430.     From December 31, 2017 at 11:02 a.m. to January 1, 2018 at 11:28 a.m. and December 30, 2017 at 11:10 p.m. to January 1, 2018 at 8:34 p.m. Plaintiff Scott Lawton's serious health condition caused him to be unable to safely perform his job.

431.     Plaintiff Scott Lawton therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

432.     Thereafter, CSX accused Plaintiff Scott Lawton of abusing his intermittent FMLA leave and suspended him without pay for thirty days.

433.     CSX had no reason to believe Plaintiff Scott Lawton was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF LESTER LOVELADY

434.     Plaintiff Lester Lovelady suffers from a serious health condition within the FMLA's meaning.

435.     Plaintiff Lester Lovelady's serious health condition is also a disability within the ADA's meaning.

436.     Plaintiff Lester Lovelady had requested intermittent FMLA leave for his serious health condition.

437.     CSX approved Plaintiff Lester Lovelady's request for intermittent FMLA leave.

438.     Since then, Plaintiff Lester Lovelady has submitted the paperwork necessary to maintain his intermittent FMLA leave.

439.     Plaintiff Lester Lovelady's use of FMLA leave caused negative points under CSX's

CAPS system to remain on his record.

440.    From December 24, 2017 at 12:28 p.m. to December 26, 2017 at 1:20 a.m., Plaintiff Lester Lovelady's serious health condition caused him to be unable to safely perform his job.

441.    Plaintiff Lester Lovelady therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

442.    Thereafter, CSX accused Plaintiff Lester Lovelady of abusing his intermittent FMLA leave and terminated him.

443.    CSX had no reason to believe Plaintiff Lester Lovelady was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF DION MCGEE

444.    Plaintiff Dion McGee's son suffers from a serious health condition within the FMLA's meaning.

445.    Plaintiff Dion McGee's son's serious health condition is also a disability within the ADA's meaning.

446.    Plaintiff Dion McGee had requested intermittent FMLA leave for his son's serious health condition.

447.    CSX approved Plaintiff Dion McGee's request for intermittent FMLA leave.

448.    Since then, Plaintiff Dion McGee has submitted the paperwork necessary to maintain his intermittent FMLA leave.

449.    Plaintiff Dion McGee's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

450.    From December 30, 2017 at 2:12 a.m. to January 1, 2018 at 6:26 p.m., Plaintiff

Dion McGee's son's serious health condition caused Plaintiff Dion McGee to be unable to work.

451.    Plaintiff Dion McGee therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

452.    Thereafter, CSX accused Plaintiff Dion McGee of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 15 to February 23, 2018.

453.    CSX had no reason to believe Plaintiff Dion McGee was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF CHRIS MCSHEE

454.    Plaintiff Chris McShee suffers from a serious health condition within the FMLA's meaning.

455.    Plaintiff Chris McShee's serious health condition is also a disability within the ADA's meaning.

456.    Plaintiff Chris McShee had requested intermittent FMLA leave for his serious health condition.

457.    CSX approved Plaintiff Chris McShee's request for intermittent FMLA leave.

458.    Since then, Plaintiff Chris McShee has submitted the paperwork necessary to maintain his intermittent FMLA leave.

459.    Plaintiff Chris McShee's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

460.    From December 24, 2017 at 7:17 a.m. to December 27 2017 at 10:01 p.m., Plaintiff Chris McShee's serious health condition caused him to be unable to safely perform his job.

461.    Plaintiff Chris McShee therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

462.    Thereafter, CSX accused Plaintiff Chris McShee of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 8 to March 2, 2018.

463.    CSX had no reason to believe Plaintiff Chris McShee was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF ROBERT MILLER

464.    Plaintiff Robert Miller suffers from a serious health condition within the FMLA's meaning.

465.    Plaintiff Robert Miller's serious health condition is also a disability within the ADA's meaning.

466.    Plaintiff Robert Miller had requested intermittent FMLA leave for his serious health condition.

467.    CSX approved Plaintiff Robert Miller's request for intermittent FMLA leave.

468.    Since then, Plaintiff Robert Miller has submitted the paperwork necessary to maintain his intermittent FMLA leave.

469.    Plaintiff Robert Miller's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

470.    During the Christmas and New Year's Eve of 2017 Holidays, Plaintiff Robert Miller's serious health condition caused him to be unable to safely perform his job.

471.    Plaintiff Robert Miller therefore notified CSX via one of the means specified in its

policies that he needed to use the intermittent FMLA leave for which he had already been approved.

472.    Thereafter, CSX accused Plaintiff Robert Miller of abusing his intermittent FMLA leave and suspended him without pay.

473.    CSX had no reason to believe Plaintiff Robert Miller was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JASON MONROE**

474.    Plaintiff Jason Monroe suffers from a serious health condition within the FMLA's meaning.

475.    Plaintiff Jason Monroe's serious health condition is also a disability within the ADA's meaning.

476.    Plaintiff Jason Monroe had requested intermittent FMLA leave for his serious health condition.

477.    CSX approved Plaintiff Jason Monroe's request for intermittent FMLA leave.

478.    Since then, Plaintiff Jason Monroe has submitted the paperwork necessary to maintain his intermittent FMLA leave.

479.    Plaintiff Jason Monroe's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

480.    From December 23, 2017 at 8:52 a.m. to December 26, 2017 at 12:06 a.m. and December 31, 2017 at 7:43 p.m. to sometime on January 1, 2018, Jason Monroe's serious health condition caused him to be unable to safely perform his job.

481.    Plaintiff Jason Monroe therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been

approved.

482.    Thereafter, CSX accused Plaintiff Jason Monroe of abusing his intermittent FMLA leave and terminated him.

483.    CSX had no reason to believe Plaintiff Jason Monroe was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF MATTHEW MORGAN**

484.    Plaintiff Matthew Morgan suffers from a serious health condition within the FMLA's meaning.

485.    Plaintiff Matthew Morgan's serious health condition is also a disability within the ADA's meaning.

486.    Plaintiff Matthew Morgan had requested intermittent FMLA leave for his serious health condition.

487.    CSX approved Plaintiff Matthew Morgan's request for intermittent FMLA leave.

488.    Since then, Plaintiff Matthew Morgan has submitted the paperwork necessary to maintain his intermittent FMLA leave.

489.    Plaintiff Matthew Morgan's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

490.    During the Christmas and New Year's Eve of 2017 Holidays, Plaintiff Matthew Morgan's serious health condition caused him to be unable to safely perform his job.

491.    Plaintiff Matthew Morgan therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

492.    Thereafter, CSX accused Plaintiff Matthew Morgan of abusing his intermittent

FMLA leave and suspended him without pay.

493.    CSX had no reason to believe Plaintiff Matthew Morgan was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JAMES MORTON JR.

494.    Plaintiff James Morton Jr. suffers from a serious health condition within the FMLA's meaning.

495.    Plaintiff James Morton Jr.'s serious health condition is also a disability within the ADA's meaning.

496.    Plaintiff James Morton Jr. had requested intermittent FMLA leave for his serious health condition.

497.    CSX approved Plaintiff James Morton Jr.'s request for intermittent FMLA leave.

498.    Since then, Plaintiff James Morton Jr. has submitted the paperwork necessary to maintain his intermittent FMLA leave.

499.    Plaintiff James Morton Jr.'s use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

500.    From December 23, 2017 at 7:25 a.m. to December 26, 2017 at 8:33 a.m., Plaintiff James Morton Jr.'s serious health necessitated him taking time off work.

501.    Plaintiff James Morton Jr. therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

502.    Thereafter, CSX accused Plaintiff James Morton Jr. of abusing his intermittent FMLA leave and terminated him.

503.    CSX had no reason to believe Plaintiff James Morton Jr. was abusing his

intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF TOBY PACK

504.    Plaintiff Toby Pack suffers from a serious health condition within the FMLA's meaning.

505.    Plaintiff Toby Pack's serious health condition is also a disability within the ADA's meaning.

506.    Plaintiff Toby Pack had requested intermittent FMLA leave for his serious health condition.

507.    CSX approved Plaintiff Toby Pack's request for intermittent FMLA leave.

508.    Since then, Plaintiff Toby Pack has submitted the paperwork necessary to maintain his intermittent FMLA leave.

509.    Plaintiff Toby Pack's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

510.    On August 23, 2017, Plaintiff Toby Pack had a medical appointment for his serious health condition, and he intended to take his child to his child's first day of school before attending that appointment.

511.    Concerned that he may exceed the number of FMLA days he was allowed for a given time period and wanting to be paid for the day, Plaintiff Toby Pack tried to use a personal leave day.

512.    CSX denied Plaintiff Toby Pack's request for a personal leave day.

513.    Plaintiff Toby Pack then told CSX that he needed to use the intermittent FMLA leave for which he had already been approved.

514.    Thereafter, CSX accused Plaintiff Toby Pack of abusing his intermittent FMLA

leave and terminated him.

515.    CSX had no reason to believe Plaintiff Toby Pack was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off after he requested and was denied a personal leave day.

## PLAINTIFF RENNIE PANKOSKI

516.    Plaintiff Rennie Pankoski suffers from a serious health condition within the FMLA's meaning.

517.    Plaintiff Rennie Pankoski's serious health condition is also a disability within the ADA's meaning.

518.    Plaintiff Rennie Pankoski had requested intermittent FMLA leave for his serious health condition.

519.    CSX approved Plaintiff Rennie Pankoski's request for intermittent FMLA leave.

520.    Since then, Plaintiff Rennie Pankoski has submitted the paperwork necessary to maintain his intermittent FMLA leave.

521.    Plaintiff Rennie Pankoski's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

522.    From December 25, 2017 at 10:15 a.m. to December 26, 2017 at 1:10 a.m., Plaintiff Rennie Pankoski's serious health condition caused him to be unable to safely perform his job.

523.    Plaintiff Rennie Pankoski therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

524.    Thereafter, CSX accused Plaintiff Rennie Pankoski of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which

was January 2 to February 21, 2018.

525.   CSX had no reason to believe Plaintiff Rennie Pankoski was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF LAMONT PAULK

526.   Plaintiff Lamont Paulk suffers from a serious health condition within the FMLA's meaning.

527.   Plaintiff Lamont Paulk's serious health condition is also a disability within the ADA's meaning.

528.   Plaintiff Lamont Paulk had requested intermittent FMLA leave for his serious health condition.

529.   CSX approved Plaintiff Lamont Paulk's request for intermittent FMLA leave.

530.   Since then, Plaintiff Lamont Paulk has submitted the paperwork necessary to maintain his intermittent FMLA leave.

531.   Plaintiff Lamont Paulk's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

532.   From December 23, 2017 at 10:54 a.m. to December 25, 2017 at 11:05 p.m., Plaintiff Lamont Paulk's serious health condition caused him to be unable to safely perform his job.

533.    Plaintiff Lamont Paulk therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

534.   Thereafter, CSX accused Plaintiff Lamont Paulk of abusing his intermittent FMLA leave and suspended him for thirty days without pay.

535.    CSX had no reason to believe Plaintiff Lamont Paulk was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF DENVER PETERSON

536.    Plaintiff Denver Peterson suffers from a serious health condition within the FMLA's meaning.

537.    Plaintiff Denver Peterson's serious health condition is also a disability within the ADA's meaning.

538.    Plaintiff Denver Peterson had requested intermittent FMLA leave for his serious health condition.

539.    CSX approved Plaintiff Denver Peterson's request for intermittent FMLA leave.

540.    Since then, Plaintiff Denver Peterson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

541.    Plaintiff Denver Peterson's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

542.    During some of the 2017 holiday season, Plaintiff Denver Peterson's serious health condition caused him to be unable to safely perform his job.

543.    Plaintiff Denver Peterson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

544.    Thereafter, CSX accused Plaintiff Denver Peterson of abusing his intermittent FMLA leave and charged him with a rules violation.

545.    Plaintiff Denver Peterson signed a waiver, under which he agreed to waive his right to an internal hearing in return for a thirty-day suspension without pay, for the charge because he

was told that CSX was looking to terminate him for his supposed FMLA abuse.

546.    CSX had no reason to believe Plaintiff Denver Peterson was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF MATTHEW RAFFERTY

547.    Plaintiff Michael Rafferty suffers from a serious health condition within the FMLA's meaning.

548.    Plaintiff Michael Rafferty's serious health condition is also a disability within the ADA's meaning.

549.    Plaintiff Michael Rafferty had requested intermittent FMLA leave for his serious health condition.

550.    CSX approved Plaintiff Michael Rafferty's request for intermittent FMLA leave.

551.    Since then, Plaintiff Michael Rafferty has submitted the paperwork necessary to maintain his intermittent FMLA leave.

552.    Plaintiff Michael Rafferty's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

553.    During some of the 2017 holiday season, Plaintiff Michael Rafferty's serious health condition caused him to be unable to safely perform his job.

554.    Plaintiff Michael Rafferty therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

555.    Thereafter, CSX accused Plaintiff Michael Rafferty of abusing his intermittent FMLA leave and suspended him without pay.

556.    CSX had no reason to believe Plaintiff Michael Rafferty was abusing his

intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JOSEPH RICHARDSON

557.    Plaintiff Joseph Richardson suffers from a serious health condition within the FMLA's meaning.

558.    Plaintiff Joseph Richardson's serious health condition is also a disability within the ADA's meaning.

559.    Plaintiff Joseph Richardson had requested intermittent FMLA leave for his serious health condition.

560.    CSX approved Plaintiff Joseph Richardson's request for intermittent FMLA leave.

561.    Since then, Plaintiff Joseph Richardson has submitted the paperwork necessary to maintain his intermittent FMLA leave.

562.    Plaintiff Joseph Richardson's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

563.    During Christmas and New Year's in 2017, Plaintiff Joseph Richardson's serious health condition caused him to be unable to safely perform his job.

564.    Plaintiff Joseph Richardson therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

565.    Thereafter, CSX accused Plaintiff Joseph Richardson of abusing his intermittent FMLA leave, suspended him without pay.

566.    CSX had no reason to believe Plaintiff Joseph Richardson was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF MIKE ROBBINS**

567.    Plaintiff Mike Robbins suffers from migraines.

568.    Plaintiff Mike Robbins's migraines result from anatomical, physiological, and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

569.    Plaintiff Mike Robbins's migraines substantially limit his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

570.    Plaintiff Mike Robbins requested intermittent FMLA leave for his migraines.

571.    CSX approved Plaintiff Mike Robbins's request for intermittent FMLA leave.

572.    Plaintiff Mike Robbins submitted the paperwork necessary to maintain his intermittent FMLA leave.

573.    Plaintiff Mike Robbins's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

574.    During the 2017 holiday season, Plaintiff Mike Robbins's migraines caused him to be unable to safely perform his job.

575.    Plaintiff Mike Robbins therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

576.    Thereafter, CSX accused Plaintiff Mike Robbins of abusing his intermittent FMLA leave and suspended him without pay.

577.    CSX had no reason to believe Plaintiff Mike Robbins was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF MOUSSA SAYED**

578.    Plaintiff Moussa Sayed suffers from a serious health condition within the FMLA's meaning.

579.    Plaintiff Moussa Sayed's serious health condition is also a disability within the ADA's meaning.

580.    Plaintiff Moussa Sayed had requested intermittent FMLA leave for his serious health condition.

581.    CSX approved Plaintiff Moussa Sayed's request for intermittent FMLA leave.

582.    Since then, Plaintiff Moussa Sayed has submitted the paperwork necessary to maintain his intermittent FMLA leave.

583.    Plaintiff Moussa Sayed's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

584.    From December 24, 2017 at 1:02 p.m. to December 26, 2017 at 8:27 a.m., Plaintiff Moussa Sayed's serious health condition caused him to be unable to safely perform his job.

585.     Plaintiff Moussa Sayed therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

586.    Thereafter, CSX accused Plaintiff Moussa Sayed of abusing his intermittent FMLA leave and suspended him for thirty days without pay.

587.    CSX had no reason to believe Plaintiff Moussa Sayed was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF CHRIS SCOTT**

588.    Plaintiff Chris Scott suffers from a serious health condition within the FMLA's

meaning.

589.    Plaintiff Chris Scott's serious health condition is also a disability within the ADA's meaning.

590.    Plaintiff Chris Scott had requested intermittent FMLA leave for his serious health condition.

591.    CSX approved Plaintiff Chris Scott's request for intermittent FMLA leave.

592.    Since then, Plaintiff Chris Scott has submitted the paperwork necessary to maintain his intermittent FMLA leave.

593.    Plaintiff Chris Scott's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

594.    From December 25, 2017 at 12:03 a.m. to December 25, 2017 at 1:34 p.m., Plaintiff Chris Scott's serious health condition caused him to be unable to safely perform his job.

595.    Plaintiff Chris Scott therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

596.    Thereafter, CSX accused Plaintiff Chris Scott of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 8 to February 14, 2018.

597.    CSX had no reason to believe Plaintiff Chris Scott was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF COREY SECREST**

598.    Plaintiff Corey Secrest suffers from a serious health condition within the FMLA's meaning.

599.    Plaintiff Corey Secrest's serious health condition is also a disability within the ADA's meaning.

600.    Plaintiff Corey Secrest had requested intermittent FMLA leave for his serious health condition.

601.    CSX approved Plaintiff Corey Secrest's request for intermittent FMLA leave.

602.    Since then, Plaintiff Corey Secrest has submitted the paperwork necessary to maintain his intermittent FMLA leave.

603.    Plaintiff Corey Secrest's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

604.    During some of the 2017 holiday season, Plaintiff Corey Secrest's serious health condition caused him to be unable to safely perform his job.

605.     Plaintiff Corey Secrest therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

606.    Thereafter, CSX accused Plaintiff Corey Secrest of abusing his intermittent FMLA leave and charged him with a rules violation.

607.    Plaintiff Corey Secrest signed a waiver, under which he agreed to waive his right to an internal hearing in return for a thirty-day suspension without pay, for the charge because he was told that CSX was looking to terminate him for his supposed FMLA abuse.

608.    CSX had no reason to believe Plaintiff Corey Secrest was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JOSEPH SCHULTZ**

609.    Plaintiff Joseph Shultz suffers from a serious health condition within the FMLA's

meaning.

610.    Plaintiff Joseph Shultz's serious health condition is also a disability within the ADA's meaning.

611.    Plaintiff Joseph Shultz had requested intermittent FMLA leave for his serious health condition.

612.    CSX approved Plaintiff Joseph Shultz's request for intermittent FMLA leave.

613.    Since then, Plaintiff Joseph Shultz has submitted the paperwork necessary to maintain his intermittent FMLA leave.

614.    Plaintiff Joseph Shultz's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

615.    From December 23, 2017 at 4:45 a.m. to December 26, 2017 at 5:00 a.m. and December 31, 2017 at 5:51 a.m. to January 1, 2018 at 3:54 a.m., Plaintiff Joseph Shultz's serious health condition caused him to be unable to safely perform his job.

616.    Plaintiff Joseph Shultz therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

617.    Thereafter, CSX accused Plaintiff Joseph Shultz of abusing his intermittent FMLA leave and terminated him.

618.    CSX had no reason to believe Plaintiff Joseph Shultz was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JASON SIEWERT**

619.    Plaintiff Jason Siewert suffers from a serious health condition within the FMLA's meaning.

620.    Plaintiff Jason Siewert's serious health condition is also a disability within the ADA's meaning.

621.    Plaintiff Jason Siewert had requested intermittent FMLA leave for his serious health condition.

622.    CSX approved Plaintiff Jason Siewert's request for intermittent FMLA leave.

623.    Since then, Plaintiff Jason Siewert has submitted the paperwork necessary to maintain his intermittent FMLA leave.

624.    Plaintiff Jason Siewert's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

625.    From December 23, 2017 at 11:44 a.m. to December 25, 2017 at 11:54 a.m., Plaintiff Jason Siewert's serious health condition caused him to be unable to safely perform his job.

626.    Plaintiff Jason Siewert therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

627.    Thereafter, CSX accused Plaintiff Jason Siewert of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 3 to February 16, 2018.

628.    CSX had no reason to believe Plaintiff Jason Siewert was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF KENNETH STOVER**

629.    Plaintiff Kenneth Stover suffers from a serious health condition within the FMLA's meaning.

630.    Plaintiff Kenneth Stover's serious health condition is also a disability within the ADA's meaning.

631.    Plaintiff Kenneth Stover had requested intermittent FMLA leave for his serious health condition.

632.    CSX approved Plaintiff Kenneth Stover's request for intermittent FMLA leave.

633.    Since then, Plaintiff Kenneth Stover has submitted the paperwork necessary to maintain his intermittent FMLA leave.

634.    Plaintiff Kenneth Stover's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

635.    From December 23, 2017 at 3:45 a.m. to December 26, 2017 at 6:27 p.m., Plaintiff Kenneth Stover's serious health condition caused him to be unable to safely perform his job.

636.    Plaintiff Kenneth Stover therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

637.    Thereafter, CSX accused Plaintiff Kenneth Stover of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was fifty-two days.

638.    CSX had no reason to believe Plaintiff Kenneth Stover was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF BRYAN STUTZ**

639.    Plaintiff Bryan Stutz suffers from PTSD.

640.    Plaintiff Bryan Stutz's PTSD results from anatomical, physiological, and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques.

641.    Plaintiff Bryan Stutz's PTSD substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

642.    Plaintiff Bryan Stutz requested intermittent FMLA leave for his PTSD.

643.    CSX approved Plaintiff Bryan Stutz's request for intermittent FMLA leave.

644.    Plaintiff Bryan Stutz submitted the paperwork necessary to maintain his intermittent FMLA leave.

645.    Plaintiff Bryan Stutz's use of FMLA leave caused negative points under CSX's CAPS system to remain on her record.

646.    In September of 2018, CSX terminated Plaintiff Bryan Stutz because of those points.

### PLAINTIFF NATHAN TAYLOR

647.    Plaintiff Nathan Taylor suffers from a serious health condition within the FMLA's meaning.

648.    Plaintiff Nathan Taylor's serious health condition is also a disability within the ADA's meaning.

649.    Plaintiff Nathan Taylor had requested intermittent FMLA leave for his serious health condition.

650.    CSX approved Plaintiff Nathan Taylor's request for intermittent FMLA leave.

651.    Since then, Plaintiff Nathan Taylor has submitted the paperwork necessary to maintain his intermittent FMLA leave.

652.    Plaintiff Nathan Taylor's use of FMLA leave caused negative points under CSX's

CAPS system to remain on his record.

653.     During the Christmas and New Year's Eve Holiday of 2017, Plaintiff Nathan Taylor's serious health condition caused him to be unable to safely perform his job.

654.      Plaintiff Nathan Taylor therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

655.     Thereafter, CSX accused Plaintiff Nathan Taylor of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was more than thirty days.

656.     CSX had no reason to believe Plaintiff Nathan Taylor was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF KEVINA THOMAS

657.     Plaintiff Kevina Thomas suffers from a serious health condition within the FMLA's meaning.

658.     Plaintiff Kevina Thomas's serious health condition is also a disability within the ADA's meaning.

659.     Plaintiff Kevina Thomas had requested intermittent FMLA leave for her serious health condition.

660.     CSX approved Plaintiff Kevina Thomas's request for intermittent FMLA leave.

661.     Since then, Plaintiff Kevina Thomas has submitted the paperwork necessary to maintain her intermittent FMLA leave.

662.     Plaintiff Kevina Thomas's use of FMLA leave caused negative points under CSX's CAPS system to remain on her record.

663. On September 7, 2017, CSX terminated Plaintiff Kevina Thomas because of those points.

## PLAINTIFF KEVIN VAN WAGENEN

664. Plaintiff Kevin Van Wagenen suffers from a serious health condition within the FMLA's meaning.

665. Plaintiff Kevin Van Wagenen's serious health condition is also a disability within the ADA's meaning.

666. Plaintiff Kevin Van Wagenen had requested intermittent FMLA leave for his serious health condition.

667. CSX approved Plaintiff Kevin Van Wagenen's request for intermittent FMLA leave.

668. Since then, Plaintiff Kevin Van Wagenen has submitted the paperwork necessary to maintain his intermittent FMLA leave.

669. Plaintiff Kevin Van Wagenen's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

670. From December 23, 2017 at 11:16 p.m. to December 25, 2017 at 11:45 p.m., Plaintiff Kevin Van Wagenen's serious health condition caused him to be unable to safely perform his job.

671. Plaintiff Kevin Van Wagenen therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

672. Thereafter, CSX accused Plaintiff Kevin Van Wagenen of abusing his intermittent FMLA leave and terminated him.

673.    CSX had no reason to believe Plaintiff Kevin Van Wagenen was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF DERICK WALKER

674.    Plaintiff Derick Walker suffers from a serious health condition within the FMLA's meaning.

675.    Plaintiff Derick Walker's serious health condition is also a disability within the ADA's meaning.

676.    Plaintiff Derick Walker had requested intermittent FMLA leave for his serious health condition.

677.    CSX approved Plaintiff Derick Walker's request for intermittent FMLA leave.

678.    Since then, Plaintiff Derick Walker has submitted the paperwork necessary to maintain his intermittent FMLA leave.

679.    Plaintiff Derick Walker's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

680.    During the 2017 holiday season, Plaintiff Derick Walker's serious health condition caused him to be unable to safely perform his job.

681.    Plaintiff Derick Walker therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

682.    Thereafter, CSX accused Plaintiff Derick Walker of abusing his intermittent FMLA leave and terminated him.

683.    CSX had no reason to believe Plaintiff Derick Walker was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JOHN VARECKA

684.    Plaintiff John Varecka suffers from a serious health condition within the FMLA's meaning.

685.    Plaintiff John Varecka's serious health condition is also a disability within the ADA's meaning.

686.    Plaintiff John Varecka had requested intermittent FMLA leave for his serious health condition.

687.    CSX approved Plaintiff John Varecka's request for intermittent FMLA leave.

688.    Since then, Plaintiff John Varecka has submitted the paperwork necessary to maintain his intermittent FMLA leave.

689.    Plaintiff John Varecka's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

690.    From December 23, 2017 at 1:05 p.m. to December 25, 2017 at 11:30 p.m. and December 30, 2017 at 6:37 p.m. to January 1, 2017 at 10:48 a.m., Plaintiff John Varecka's serious health condition caused him to be unable to safely perform his job.

691.    Plaintiff John Varecka therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

692.    Thereafter, CSX accused Plaintiff John Varecka of abusing his intermittent FMLA leave and terminated him.

693.    CSX had no reason to believe Plaintiff John Varecka was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF WILLIAM WASDIN III

694.    Plaintiff William Wasdin III suffers from a serious health condition within the FMLA's meaning.

695.    Plaintiff William Wasdin III's serious health condition is also a disability within the ADA's meaning.

696.    Plaintiff William Wasdin III had requested intermittent FMLA leave for his serious health condition.

697.    CSX approved Plaintiff William Wasdin III's request for intermittent FMLA leave.

698.    Since then, Plaintiff William Wasdin III has submitted the paperwork necessary to maintain his intermittent FMLA leave.

699.    Plaintiff William Wasdin III's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

700.    From December 23, 2017 at 4:47 p.m. to December 26, 2017 at 6:17 a.m., Plaintiff William Wasdin III's serious health condition caused him to be unable to safely perform his job.

701.    Plaintiff William Wasdin III therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

702.    Thereafter, CSX accused Plaintiff William Wasdin III of abusing his intermittent FMLA leave and terminated him.

703.    CSX had no reason to believe Plaintiff William Wasdin III was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF CLEATIS WEBB

704.    Plaintiff Cleatis Webb suffers from a serious health condition within the FMLA's

meaning.

705.    Plaintiff Cleatis Webb's serious health condition is also a disability within the ADA's meaning.

706.    Plaintiff Cleatis Webb had requested intermittent FMLA leave for his serious health condition.

707.    CSX approved Plaintiff Cleatis Webb's request for intermittent FMLA leave.

708.    Since then, Plaintiff Cleatis Webb has submitted the paperwork necessary to maintain his intermittent FMLA leave.

709.    Plaintiff Cleatis Webb's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

710.    From December 23, 2017 at 1:09 a.m. to December 25, 2017 at 9:53 a.m., Plaintiff Cleatis Webb's serious health condition caused him to be unable to safely perform his job.

711.    Plaintiff Cleatis Webb therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

712.    Thereafter, CSX accused Plaintiff Cleatis Webb of abusing his intermittent FMLA leave and suspended him without pay for the time he had been held out of service, which was January 12 to February 23, 2018.

713.    CSX had no reason to believe Plaintiff Cleatis Webb was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF JEFFREY WHISNER**

714.    Plaintiff Jeffrey Whisner's mother suffers from a serious health condition within the FMLA's meaning.

715.    Plaintiff Jeffrey Whisner's mother's serious health condition is also a disability within the ADA's meaning.

716.    Plaintiff Jeffrey Whisner had requested intermittent FMLA leave so that he could care for his mother when his mother's serious health condition so necessitated.

717.    CSX approved Plaintiff Jeffrey Whisner's request for intermittent FMLA leave.

718.    Since then, Plaintiff Jeffrey Whisner has submitted the paperwork necessary to maintain his intermittent FMLA leave.

719.    Plaintiff Jeffrey Whisner's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

720.    From December 24, 2017 at 10:01 a.m. to December 26, 2017 at 6:44 p.m., the serious health of Plaintiff Jeffrey Whisner's mother necessitated Plaintiff Jeffrey Whisner taking time off work.

721.    Plaintiff Jeffrey Whisner therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

722.    Thereafter, CSX accused Plaintiff Jeffrey Whisner of abusing his intermittent FMLA leave and terminated him.

723.    CSX had no reason to believe Plaintiff Jeffrey Whisner was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

**PLAINTIFF KYLE WOOD**

724.    Plaintiff Kyle Wood suffers from a serious health condition within the FMLA's meaning.

725.    Plaintiff Kyle Wood's serious health condition is also a disability within the ADA's

meaning.

726.    Plaintiff Kyle Wood had requested intermittent FMLA leave for his serious health condition.

727.    CSX approved Plaintiff Kyle Wood's request for intermittent FMLA leave.

728.    Since then, Plaintiff Kyle Wood has submitted the paperwork necessary to maintain his intermittent FMLA leave.

729.    Plaintiff Kyle Wood's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

730.    On February 14, 2019, the serious health of Plaintiff Kyle Wood caused him to be unable to safely perform his job.

731.    Plaintiff Kyle Wood therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

732.    Thereafter, CSX accused Plaintiff Kyle Wood of abusing his intermittent FMLA leave and suspended him for five days without pay.

733.    CSX had no reason to believe Plaintiff Kyle Wood was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

734.    At the end of May 2022, the serious health of Plaintiff Kyle Wood again caused him to be unable to safely perform his job.

735.    Plaintiff Kyle Wood therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had already been approved.

736.    Thereafter, CSX accused Plaintiff Kyle Wood of abusing his intermittent FMLA

leave and terminated him.

737.    CSX had no reason to believe Plaintiff Kyle Wood was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a weekend.

## CLASS ALLEGATIONS

738.    Plaintiffs bring FMLA claims against CSX pursuant to Federal Rule of Civil Procedure 23, seeking back pay, monetary relief, other compensatory relief, and injunctive and declaratory relief on behalf of themselves and the following classes:

**Miscalculation Class:**

Individuals employed by CSX who, at any time from three years preceding the complaint's filing to the resolution of this action, had their FMLA leave counted by increments larger than one hour or the smallest increment of time in which CSX calculates non-FMLA leave, whichever is less.

**Attendance Points Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, had attendance points remain on their record solely because they took FMLA leave.

**Discipline or Termination Class:**

Individuals who, at any time from three years preceding the complaint's filing to the resolution of this action, were disciplined or terminated for using FMLA leave.

Plaintiffs reserve the right to revise these class definitions based on discovery or other legal developments.

739.    Class treatment is appropriate because the class is so numerous that joinder of all members is impracticable. The exact number within the class is unknown, but it may be determined from records maintained by CSX.

740.    Class treatment is appropriate because there are questions of law or fact common to the classes, including the following:

    a.   whether CSX engaged in a pattern and practice of retaliation against class members on the basis of their use of FMLA leave or interfered with class members' use of FMLA leave;

    b.   whether CSX's companywide policy of disciplining employees for using FMLA leave on a weekend or what CSX considers a holiday violates the FMLA;

    c.   whether CSX's companywide policy of counting FMLA use by the day and not the hour violates the FMLA;

    d.   whether CSX's companywide policy of disqualifying employees who take FMLA leave from having the attendance points expunged violates the FMLA;

    e.   whether monetary damages, injunctive relief, and other equitable remedies are warranted; and

    f.   whether punitive damages are warranted.

741.    Class treatment is appropriate because CSX will raise common defenses to the claims.

742.    Class treatment is appropriate because Plaintiffs are typical of the class's claims, and Plaintiffs will fairly and adequately protect the class's interests.

743.    Class treatment is appropriate because Plaintiffs have retained counsel who are competent, experienced in litigating class actions, and will effectively represent the interests of the class.

744.    Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for CSX and/or would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

745.    Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(2) because CSX has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

746.    Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact, including those listed above, predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

747.    Class treatment of is appropriate under Federal Rule of Civil Procedure 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of the parties and the Court.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FMLA—INTERFERENCE

748.    The FMLA entitles employees to up to twelve weeks of leave during any twelve-month period for certain reasons, including the employee's serious health condition. See 29 U.S.C. § 2612(a)(l).

749.    The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." *See* 29 U.S.C. § 2615(a)(l).

750.    CSX interfered with, restrained, and denied the exercise of the protected rights of Plaintiffs and the putative class members when it, among other things, miscounted the amount of FMLA leave they used, disqualified them from having attendance points expunged, charged them with a workplace rule violation for using taking FMLA leave, removed them from service for the supposed violations, and disciplined them for using FMLA leave.

751.    Because CSX violated the FMLA, Plaintiffs and the putative class members are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Plaintiffs and the putative class members are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

752.    CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Plaintiffs and the putative class. As a result, Plaintiffs and the putative class members are entitled to punitive damages.

## COUNT II
## VIOLATIONS OF THE FMLA—DISCRIMINATION

753.    The FMLA makes it is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *See* 29 U.S.C. § 2615(a)(2).

754.    CSX discriminated against Plaintiffs' and the putative class members' rights under the FMLA when, among other things, it disqualified them from having attendance points expunged, charged them with a workplace rule violation for using taking FMLA leave, removed them from service for the supposed violations, forced them to defend themselves from such charges by having them submit more information about the condition that necessitated their FMLA leave than is allowed under the law, and disciplined them for taking FMLA leave.

755.    Because CSX violated the FMLA, Plaintiffs and the putative class members are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. Plaintiffs

and the putative class members are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

756.    CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Plaintiffs and the putative class. As a result, they are entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all class members, pray for relief as follows:

A.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as Class Counsel;

C.    An order expunging all discipline related to the use of FMLA from each of Plaintiffs' and the putative class members' work records, and reinstating those Plaintiffs and putative class members for whom such discipline resulted in termination;

D.    An order requiring CSX to pay to Plaintiffs and the putative class members an award for compensatory damages, damages for loss of income, back pay, lost benefits, consequential damages, front pay, liquidated damages, and other damages in an amount to be determined by the trier of fact;

E.    An order requiring CSX to pay to Plaintiffs and the putative class members an award for garden-variety emotional distress;

F.    An order requiring CSX to pay to Plaintiffs and the putative class members an award for costs (including litigation and expert costs), disbursements, interest, and attorneys' fees;

G.    An order enjoining CSX from miscounting FMLA leave and declaring such conduct to be in violation of the FMLA;

H.    An order enjoining CSX from disqualifying employees who take FMLA leave from having their attendance points reduced and declaring such conduct to be in violation of the FMLA;

I.    An order enjoining CSX to cease engaging in a pattern and practice of retaliating against employees for taking FMLA leave and declaring such conduct to be in violation of the FMLA;

J.    Leave to amend the complaint; and

K.    Such other relief as the Court deems just and proper.


Date:   April 22, 2024                          **PLAINTIFFS' COUNSEL**

                                                /s/ Nicholas D. Thompson
                                                Nicholas D. Thompson (No. 20429)
                                                CASEY JONES LAW
                                                323 N. Washington Avenue, Suite 200
                                                Minneapolis, MN 55401
                                                Phone: (757) 477-0991
                                                Email: nthompson@caseyjones.law

                                                Adam W. Hansen (admitted pro hac vice)
                                                APOLLO LAW LLC
                                                400 South 4th Street
                                                Suite 401M - 250
                                                Minneapolis, MN 55415
                                                Telephone: (612) 927-2969
                                                Facsimile: (419) 793-1804
                                                adam@apollo-law.com

                                                P. Matthew Darby (No. 5980)
                                                BERMAN, SOBIN, GROSS, FELDMAN, &
                                                DARBY, LLP
                                                1301 York Road, Suite 600
                                                Lutherville, MD 21093
                                                Telephone: (410) 769-5400
                                                Facsimile: (410) 769-9201
                                                pmdarby@bsgfdlaw.com